FILED
DEC 12 2022
U. S. DISTRICT COURT
EASTERN DISTRICT OF MO
CAPE GIRARDEAU

NUNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. **1:20 CR 63 MTS** |
| | ) | |
| NICHOLAS JOHN PROFFITT, | ) | |
| | ) | |
| Defendant. | ) | |

## GUILTY PLEA AGREEMENT

Come now the parties and hereby agree, as follows:

**1. PARTIES:**

The parties are the defendant Nicholas John Proffitt represented by defense counsel Jennifer L. Booth, and the United States of America (hereinafter "United States" or "Government"), represented by the Office of the United States Attorney for the Eastern District of Missouri and the U.S. Department of Justice, Civil Rights Division. This agreement does not, and is not intended to, bind any other governmental office or agency. The Court is neither a party to nor bound by this agreement.

**2. GUILTY PLEA:**

Pursuant to Rule 11(c)(1)(A), Federal Rules of Criminal Procedure, in exchange for the defendant's voluntary plea of guilty to Use of Fire to Damage Religious Property in violation of Title 18, United States Code, Section 247(a)(1) (Count 1), and Use of Fire in the Commission of a Federal Felony in violation of Title 18, United States Code, Section 844(h) (Count 2), the Government agrees to move for Count 3 to be dismissed at the time of sentencing. Moreover, the

1

United States agrees that no further federal prosecution will be brought in this District relative to the defendant's violations of federal law on April 24, 2020, of which the Government is aware at this time.

In addition, pursuant to Rule 11(c)(1)(B), Federal Rules of Criminal Procedure, the parties agree that the U.S. Sentencing Guidelines Total Offense Level analysis agreed to by the parties herein is the result of negotiation and led, in part, to the guilty plea. The parties further agree to jointly recommend that the district court sentence Proffitt to the maximum sentence within the applicable U.S. Sentencing Guidelines range, as determined by the district court.

## 3. ELEMENTS:

As to Count 1, charging the defendant with Use of Fire to Damage Religious Property, the defendant admits to knowingly violating Title 18, United States Code, Section 247(a)(1), and admits there is a factual basis for the plea and further fully understands that the elements of the crime are as follows:

One, the defendant intentionally defaced, damaged, and destroyed the Cape Girardeau Islamic Center located at 298 North West End Boulevard in Cape Girardeau, Missouri;

Two, the defendant did so because of the property's religious character;

Three, the offense was in or affected interstate commerce;

Four, the defendant used fire in committing the offense.

As to Count 2, charging the defendant with Use of Fire in the Commission of a Federal Felony, the defendant admits to knowingly violating Title 18, United States Code, Section 844(h),

and admits there is a factual basis for the plea and further fully understands that the elements of the crime are as follows:

One, the defendant knowingly used fire;

Two, to commit a felony which may be prosecuted in a court of the United States; to wit: Use of Fire to Damage Religious Property as charged in Count 1.

### 4. FACTS:

The parties agree that the facts in this case are as follows and that the government would prove these facts beyond a reasonable doubt if the case were to go to trial. These facts may be considered as relevant conduct pursuant to Section 1B1.3:

On April 24, 2020, at approximately 4:50 a.m., a fire was discovered inside the Islamic Center of Cape Girardeau located at 298 North West End Boulevard in Cape Girardeau, Missouri. April 24, 2020 was the first morning of the Islamic holy month of Ramadan, and the fire was started several minutes before the first scheduled prayer of the holiday.

### The Islamic Center of Cape Girardeau

The building that houses the Islamic Center has two stories. The Center uses the first floor, including offices and prayer rooms, for religious services and practices; it rents out the four residential apartments on the second floor to the Center's congregants. Each of the rental apartments were occupied by Islamic Center congregants on the morning of April 24, 2020, when these events occurred.

### Islamic Center of Cape Girardeau is Set on Fire

On the early morning of April 24, 2020, a man was captured on surveillance footage parking his four-door, sport utility vehicle at the Cape Girardeau County Transit Authority

("CTA") parking lot. The man waited in the parking lot while smoking a cigarette before dropping the butt on the ground, getting in his car, and driving four blocks to the Islamic Center.

The Islamic Center was equipped with a security camera that recorded the minutes leading up to the fire. At 4:50 a.m., that video captured a man throwing several small objects at the front display window until it broke, entering the Islamic Center building, and pouring the contents of two gallon-sized containers throughout the foyer and down the hallway. The man then lit two fires in the foyer. The flash of fire illuminated the man's face, Nike shoes, and other items of clothing, all of which matched that seen on the CTA's surveillance footage. After the fire began to spread, the man exited through the broken window, and began to jog down the street.

The residents discovered the fire at approximately 4:54 a.m. and alerted the fire department. The fire department responded and put out the fire; all of the residents were able to escape the building uninjured.

The Islamic Center building suffered severe damage that rendered it unsuitable for use as a religious center or residence. The first floor was nearly entirely destroyed: the foyer, hallway, and entrance to one prayer room were destroyed, and several copies of the Quran, prayer rugs, Islamic posters and other items used in religious services were damaged. In addition, the fire burned through parts of the first-floor ceiling and into some of the residential apartments on the second floor.

### Identification of Proffitt

Officers later discovered the Transit Authority's security camera, and collected the cigarette butt that was in the CTA parking lot. That cigarette butt was determined to be from a

Newport brand cigarette, and was subjected to DNA analysis. The DNA analysis found that the person who contributed DNA to the cigarette butt was Nicholas John Proffitt.

Surveillance cameras on the streets surrounding the Islamic Center and Transit Authority captured a vehicle matching that seen on the Transit Authority footage. That vehicle belongs to a person who identified the individual shown in the Islamic Center's footage as Nicholas John Proffitt. This person confirmed to law enforcement that Proffitt had taken the vehicle the night before the fire to go to work.

Proffitt was arrested at his place of employment carrying a pack of Newport cigarettes. Additional surveillance footage from before the fire captured Proffitt leaving work early and going to a nearby gas station. Receipts found on Proffitt's person when he was arrested showed that Proffitt purchased two Shell Rotella one-gallon containers of 15W40 motor oil, and one Pennzoil 10W30 motor oil container. The Shell oil container listed on Proffitt's receipt matches a Shell oil container found by the fire department at the Islamic Center.

### Proffitt's History with the Islamic Center of Cape Girardeau and Other Islamic Communities

Proffitt has felony convictions for prior vandalism at the Islamic Center. Specifically, in 2009, Proffitt threw rocks at the Islamic Center's windows and a car parked in its parking lot. When he was arrested and officers asked what he thought of those of the Islamic faith, he told officers "those motherfuckers can suck my dick." Proffitt was ultimately charged with, and pled guilty to, two felony counts of property damage motivated by discrimination. He admitted in court that he targeted and damaged the Islamic Center because of the religious character of the building.

In addition to these guilty pleas, Proffitt has been known to commit violence against another Islamic center and hold animus against those of the Islamic faith. In 2005, officers responded to the Islamic House of Wisdom in Dearborn, Michigan for an activated alarm and through their investigation determined that Proffitt had broken the Center's front glass doors. He was convicted of Malicious Destruction of Personal Property for this incident. Additionally, Proffitt has been known to refer to Muslims in derogatory terms such as "sand niggers." A witness also described that they would avoid passing by the Islamic Center with Proffitt due to fear that he would become agitated when seeing it.

By this plea, Nicholas John Proffitt admits that he intentionally set fire to the Islamic Center in Cape Girardeau, Missouri, as set out above, and that he set that fire because of the religious character of the Islamic Center property. Proffitt was aware that the Islamic Center operated as a house of religious worship for its members. Proffitt admits that the Islamic Center building was in, and affected interstate commerce because the Islamic Center rents apartments to its members, and the rental activity affects interstate commerce. The location of the fire was in the Eastern District of Missouri in the Southeastern Division.

## 5. STATUTORY PENALTIES:

The defendant fully understands that the maximum possible penalty provided by law for the crime to which the defendant is pleading guilty to in Count 1 of Use of Fire to Damage Religious Property is imprisonment of not more than twenty (20) years, a fine of not more than $250,000, or both such imprisonment and fine. The Court may also impose a period of supervised release of not more than three (3) years. The defendant fully understands that the mandatory penalty provided by law for the crime to which the Defendant is pleading guilty to in Count 2 of Use of Fire in the Commission of a Federal Felony is imprisonment of ten (10) years,

a fine of not more than $250,000, or both such imprisonment and fine. The Court also may impose a period of supervised release of not more than three (3) years. Pursuant to Title 18, United States Code, Section 844(h), the sentence for Count 2 must run consecutively to all other sentences imposed for any other count.

In the event defendant is subject to any undischarged or anticipated term of imprisonment imposed by any court, defendant has been apprised by counsel that the sentence imposed in this case may be imposed consecutively to the undischarged or anticipated term of imprisonment.

**6. U.S. SENTENCING GUIDELINES (2021 MANUAL):**

The defendant understands that this offense is affected by the U.S. Sentencing Guidelines and the actual sentencing range is determined by both the Total Offense Level and the Criminal History Category. The parties agree that the following are the applicable U.S. Sentencing Guidelines Total Offense Level provisions.

    **a. Chapter 2 Offense Conduct:**

        **(1) Base Offense Level:** The parties agree that the base offense level for Count 1 is 24 as found in Section 2K1.4 because the offense involved the use of fire and destruction or attempted destruction of a dwelling or place of public use. Count 2 requires a 120-month consecutive sentence to the sentence the Court imposes for Count 1.

        **(2) Specific Offense Characteristics:** The parties agree no specific offense characteristics apply.

    **b. Chapter 3 Adjustments:**

        **(1) Victim Related Adjustment:** The parties agree that the following Victim Related Adjustment applies to Count 1: 3A1.1(a) Hate Crime Motivation, as the defendant targeted the Islamic Center because of its religious nature. This increases the offense level by 3.

7

**(2) Acceptance of Responsibility:** The parties agree that three levels should be deducted pursuant to Section 3E1.1(a) and (b), because the defendant has clearly demonstrated acceptance of responsibility and timely notified the government of the defendant's intention to plead guilty. The parties agree that the defendant's eligibility for this deduction is based upon information presently known. If subsequent to the taking of the guilty plea the government receives new evidence of statements or conduct by the defendant which it believes are inconsistent with defendant's eligibility for this deduction, the government may present said evidence to the court, and argue that the defendant should not receive all or part of the deduction pursuant to Section 3E1.1, without violating the plea agreement.

**c. Estimated Total Offense Level:** The parties estimate that the Total Offense Level is 24 for Count 1. For Count 2, 18 U.S.C. 844(h) requires a 120-month sentence that will run consecutively to any sentence imposed for Count 1.

**d. Criminal History:** The determination of the defendant's Criminal History Category shall be left to the Court. Either party may challenge, before and at sentencing, the finding of the Presentence Report as to the defendant's criminal history and the applicable category. The defendant's criminal history is known to the defendant and is substantially available in the Pretrial Services Report.

**e. Effect of Parties' U.S. Sentencing Guidelines Analysis:** The parties agree that the Court is not bound by the Guidelines analysis agreed to herein. The parties may not have foreseen all applicable Guidelines. The Court may, in its discretion, apply or not apply any Guideline despite the agreement herein and the parties shall not be permitted to withdraw from the plea agreement.

**7. WAIVER OF APPEAL AND POST-CONVICTION RIGHTS:**

 **a. Appeal:** The defendant has been fully apprised by defense counsel of the defendant's rights concerning appeal and fully understands the right to appeal the sentence under Title 18, United States Code, Section 3742.

 **(1) Non-Sentencing Issues:** The parties waive all rights to appeal all non-jurisdictional, non-sentencing issues, including, but not limited to, any issues relating to pretrial motions, discovery, the guilty plea, the constitutionality of the statute(s) to which defendant is pleading guilty and whether defendant's conduct falls within the scope of the statute(s).

 **(2) Sentencing Issues:** In the event the Court accepts the plea, accepts the U.S. Sentencing Guidelines Total Offense Level agreed to herein, and, after determining a Sentencing Guidelines range, sentences the defendant within or below that range, then, as part of this agreement, the defendant hereby waives all rights to appeal all sentencing issues other than Criminal History, but only if it affects the Base Offense Level or Criminal History Category. Similarly, the Government hereby waives all rights to appeal all sentencing issues other than Criminal History, provided the Court accepts the plea, the agreed Total Offense Level and sentences the defendant within or above that range.

 **b. Habeas Corpus:** The defendant agrees to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to Title 28, United States Code, Section 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel.

 **c. Right to Records:** The defendant waives all rights, whether asserted directly or by a representative, to request from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including any records that may be

sought under the Freedom of Information Act, Title 5, United States Code, Section 522, or the Privacy Act, Title 5, United States Code, Section 552(a).

## 8. OTHER:

**a. Disclosures Required by the United States Probation Office:** The defendant agrees to truthfully complete and sign forms as required by the United States Probation Office prior to sentencing and consents to the release of these forms and any supporting documentation by the United States Probation Office to the government.

**b. Civil or Administrative Actions not Barred; Effect on Other Governmental Agencies:** Nothing contained herein limits the rights and authority of the United States to take any civil, tax, immigration/deportation or administrative action against the defendant.

**c. Supervised Release:** In addition to standard conditions of supervised release, Defendant agrees to abide by special conditions of supervised release as detailed in this paragraph. The defendant must participate in a mental health treatment program and follow the rules and regulations of that program. The probation officer, in consultation with the treatment provider, will supervise defendant's participation in the program (provider, location, modality, duration, intensity, etc.). Defendant must also take all mental health medications that are prescribed by his treating physician. These conditions will be restrictions on the defendant to which the defendant will be required to adhere. Violation of the conditions of supervised release resulting in revocation may require the defendant to serve a term of imprisonment equal to the length of the term of supervised release, but not greater than the term set forth in Title 18, United States Code, Section 3583(e)(3), without credit for the time served after release. The defendant understands that parole has been abolished.

**d. Mandatory Special Assessment:** Pursuant to Title 18, United States Code, Section 3013, the Court is required to impose a mandatory special assessment of $100 per count for a total of $200, which the defendant agrees to pay at the time of sentencing. Money paid by the defendant toward any restitution or fine imposed by the Court shall be first used to pay any unpaid mandatory special assessment.

**e. Possibility of Detention:** The defendant may be subject to immediate detention pursuant to the provisions of Title 18, United States Code, Section 3143.

**f. Fines, Restitution and Costs of Incarceration and Supervision:** The Court may impose a fine, restitution (in addition to any penalty authorized by law), costs of incarceration and costs of supervision. The defendant agrees that any fine or restitution imposed by the Court will be due and payable immediately. Pursuant to Title 18, United States Code, Section 3663A, an order of restitution is mandatory for all crimes listed in Section 3663A(c). Regardless of the Count of conviction, the amount of mandatory restitution imposed shall include all amounts allowed by Section 3663A(b) and the amount of loss agreed to by the parties, including all relevant conduct loss. The defendant agrees to provide full restitution to all victims of all charges in the indictment, including full restitution for all the damages he caused to the Islamic Center of Cape Girardeau, all damages he caused to personal property contained in the Islamic Center at the time he set fire to the Center, and all other damages caused by the defendant to any other property due to defendant starting the fire at the Islamic Center as described herein.

**g. Forfeiture:** The defendant knowingly and voluntarily waives any right, title, and interest in all items seized by law enforcement officials during the course of their investigation, whether or not they are subject to forfeiture, and agrees not to contest the vesting of title of such items in the United States. The defendant agrees to abandon his interest in all seized items and

further agrees that said items may be disposed of or destroyed by law enforcement officials in any manner without further notice. By abandoning these items, the defendant waives any future rights to receive additional notice, a valuation of the items, or the opportunity to submit a claim to contest the disposition or destruction of the items that may exist under any policies or procedures of the seizing agency.

### 9. ACKNOWLEDGMENT AND WAIVER OF THE DEFENDANT'S RIGHTS:

In pleading guilty, the defendant acknowledges, fully understands and hereby waives his rights, including but not limited to: the right to plead not guilty to the charges; the right to be tried by a jury in a public and speedy trial; the right to file pretrial motions, including motions to suppress or exclude evidence; the right at such trial to a presumption of innocence; the right to require the government to prove the elements of the offenses against the defendant beyond a reasonable doubt; the right not to testify; the right not to present any evidence; the right to be protected from compelled self-incrimination; the right at trial to confront and cross-examine adverse witnesses; the right to testify and present evidence and the right to compel the attendance of witnesses. The defendant further understands that by this guilty plea, the defendant expressly waives all the rights set forth in this paragraph.

The defendant fully understands that the defendant has the right to be represented by counsel, and if necessary, to have the Court appoint counsel at trial and at every other stage of the proceeding. The defendant's counsel has explained these rights and the consequences of the waiver of these rights. The defendant fully understands that, as a result of the guilty plea, no trial will, in fact, occur and that the only action remaining to be taken in this case is the imposition of the sentence.

The defendant is fully satisfied with the representation received from defense counsel. The defendant has reviewed the government's evidence and discussed the government's case and all possible defenses and defense witnesses with defense counsel. Defense counsel has completely and satisfactorily explored all areas which the defendant has requested relative to the government's case and any defenses.

The guilty plea could impact defendant's immigration status or result in deportation. In particular, if any crime to which defendant is pleading guilty is an "aggravated felony" as defined by Title 8, United States Code, Section 1101(a)(43), removal or deportation is presumed mandatory. Defense counsel has advised the defendant of the possible immigration consequences, including deportation, resulting from the plea.

## 10. VOLUNTARY NATURE OF THE GUILTY PLEA AND PLEA AGREEMENT:

This document constitutes the entire agreement between the defendant and the government, and no other promises or inducements have been made, directly or indirectly, by any agent of the government, including any Department of Justice attorney, concerning any plea to be entered in this case. In addition, the defendant states that no person has, directly or indirectly, threatened or coerced the defendant to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty.

The defendant acknowledges having voluntarily entered into both the plea agreement and the guilty plea. The defendant further acknowledges that this guilty plea is made of the defendant's own free will and that the defendant is, in fact, guilty.

## 11. CONSEQUENCES OF POST-PLEA MISCONDUCT:

After pleading guilty and before sentencing, if defendant commits any crime, other than minor traffic offenses, violates any condition of release that results in revocation, violates any

13

term of this guilty plea agreement, intentionally provides misleading, incomplete or untruthful information to the U.S. Probation Office or fails to appear for sentencing, the United States, at its option, may be released from its obligations under this agreement. The Government may also, in its discretion, proceed with this agreement and may advocate for any sentencing position supported by the facts, including but not limited to obstruction of justice and denial of acceptance of responsibility.

12. **NO RIGHT TO WITHDRAW GUILTY PLEA:**

Pursuant to Rule 11(c) and (d), Federal Rules of Criminal Procedure, the defendant understands that there will be no right to withdraw the plea entered under this agreement, except where the Court rejects those portions of the plea agreement which deal with charges the government agrees to dismiss or not to bring.

12 December 2022
Date

PAUL W. HAHN
Assistant United States Attorney

12 December 2022
Date

_____, AUSA, for
NOAH L. COAKLEY II
Trial Attorney, Civil Rights Division
United States Department of Justice

12-12-2022
Date

NICHOLAS JOHN PROFFITT
Defendant

12 December 2022
Date

JENNIFER L. BOOTH
Attorney for Defendant

14